IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| BRENDA LEE H.,[1] § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> KILOLO KIJAKAZI § <br> Acting Commissioner of Social Security § <br> § <br> Defendants. § | Civil Action No. 1:21-CV-00111-BU |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Brenda Lee H. seeks judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. The parties have consented to proceed before a magistrate judge. Dkt. No. 14 And the case was transferred to the undersigned for all further proceedings and entry of judgment in accordance with 28 U.S.C. § 636 (c). Dkt. No. 24.

For the reasons explained below, the hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

I.  BACKGROUND

Plaintiff originally claimed her disability began on December 7, 2017, but amended her onset date to June 1, 2019, to be consistent with her turning 50 years old. Tr. 15, 36.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial

1

*See* Administrative Record, Dkt. No. 15 ("Tr.") at 15, 36. Plaintiff applied for Title II Disability Insurance Benefits on December 7, 2017. *Id.* After her application was initially denied on August 20, 2017, Plaintiff challenged the denial and requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 108, 114. That hearing was held on December 16, 2020, with Plaintiff appearing telephonically, with the ALJ sitting remotely in Fort Worth, Texas. Tr. 32-58.

At the time of the hearing, Plaintiff was 51-years-old. Tr. 36. She completed the eleventh grade. Tr. 37. A vocational expert ("VE") testified that Plaintiff had past work experience as a short-order cook and a dietary aid. Tr. 51-52.

The ALJ found that Plaintiff was not disabled and was not entitled to disability benefits. *See* Tr. 13-31 ("ALJ Decision"). At step one of the analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2019, the amended alleged disability onset date.[2] Tr. 26. At step two, the ALJ found the Plaintiff had several severe impairments including degenerative joint disease of the bilateral hips, diabetes mellitus, diabetic retinopathy, obesity, depressive disorder, and anxiety disorder. Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met the severity required in the Social Security Regulations. Tr. 19-20. Also, during this step, the ALJ evaluated the severity of Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT") and whether those impairments satisfy the criteria of listing 12.04 or 12.06. *Id*. The ALJ evaluated the criteria's four areas and

---

[2] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.

2

found the Plaintiff had mild limitation in interacting with others and adapting or managing oneself and a moderate limitation in understanding, remembering, or applying information, and concentrating persisting, or maintaining pace. *Id*.

The ALJ also determined the Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitation:

> "[She] can stand/walk for 4 hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds or crawl; occasionally climb ramps and stairs, and occasionally balance, stoop, kneel and crouch. The claimant must avoid work at unprotected heights and around moving mechanical parts and must avoid driving as a part of the job. The claimant can understand, remember and carry out simple instructions and is precluded from fast paced or production rate paced work."

Tr. 20.

The ALJ based his opinion on the claimant's testimony, the medical records, a psychological consultive examination, state agency medical consultants from the Social Security Administration ("SSA"), and a state agency psychological consultant. Tr. 20-24. At step four, with the assistance of the VE's testimony, the ALJ found the Plaintiff unable to perform past relevant work. Tr. 24.

Instead, based on Plaintiff's age, education, work background, and the RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy Plaintiff can perform. Tr. 24-25. Specifically, the ALJ found Plaintiff employable as an officer helper, a cashier, and a garment sorter. Tr. 25. Accordingly, the ALJ determined that Plaintiff had not been under disability, as defined by the Social Security Act, for the period in question. Tr. 26.

Plaintiff appealed the ALJ's decision to the Appeals Council. Tr. 7-11. The Appeals Council denied Plaintiff's request for review on April 20, 2021, and Plaintiff timely filed this action in federal district court. Tr. 1-6.

## II.   LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520 (2017); *see also Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

III.   ANALYSIS

Plaintiff challenges the ALJ's decision on three issues: (1) the ALJ committed legal error by not considering the effect of Plaintiff's obesity on her functional capacity; (2) the RFC to perform light work is not supported by substantial evidence because the ALJ failed to account for Plaintiff's inability to follow written instructions; and (3) the RFC to perform light work is inconsistent with present SSA standards. Dkt. No. 20 at 1-2. Plaintiff argues that all issues constitute reversible error. *Id*. Because the first issue raised by Plaintiff compels remand, the undersigned need not address the remaining two issues.

Plaintiff argues the ALJ committed legal error by not evaluating her obesity and "its potentially limiting effect on the ability to sustain function over time." *Id.* at 13-17. When the ALJ found Plaintiff had a severe impairment of obesity, he should have evaluated what range her obesity fell under according to *Social Security Ruling* (SSR) 02-1p. *Id.* at 13. Under that ruling, the SSA recognizes the criteria set by the National Institutes of Health ("NIH") and recognizes a body mass index ("BMI") "greater than or equal to 40" as "extreme" obesity. *Id.* at 13-14. Here, Plaintiff's BMI exceeded that standard at 28 evaluations between January 2016 and September of 2020. *Id.* at 14. However, the ALJ did not recognize these levels or that "multiple medical conditions which [Plaintiff] suffers from are, as set forth in SSR 02-1p, particularly susceptible to the effects of 'extreme' obesity." *Id.*

Plaintiff argues the ALJ did not evaluate the medical reports of her obesity and that her doctors found it "had a particularly significant effect on her 'severe' bilateral hip arthritis." *Id.* at 16. Plaintiff explains that her doctor believed she would be a good

6

candidate for total hip replacement, but she was high risk for the surgery due to her morbid obesity. *Id.* Plaintiff also argues she testified she can only stand for 10 minutes, walk for 15 minutes, uses a cane, and cannot sit long due to her hip pain which is more evidence her obesity affects her ability to stand, walk, and sit. *Id.*

Overall, Plaintiff argues the ALJ made note of her obesity but "made no findings on the effect of [her] 'extreme' obesity on her physical movements in a workplace setting." *Id.* As such, Plaintiff argues the ALJ committed legal error because this Court cannot determine if the ALJ properly analyzed her obesity and its effect on her RFC. *Id.* at 17. The error is not harmless, she argues, because the inclusion could have resulted in a different outcome. *Id.*

The Commissioner responds in one paragraph, claiming the ALJ committed no error because he found Plaintiff's obesity was a severe impairment and then considered all her impairments when determining her RFC. Dkt. No. 21 at 4-5. As such, the Commissioner argues that the ALJ considered the "'combined' effects of Plaintiffs impairments" and restricted her to a reduced range of light work. *Id.* at 4. The Commissioner asserts that the ALJ is not required to follow formulistic rules or "explicitly articulate every bit of evidence that he accepted or rejected." *Id.* at 4-5. .

In her Reply, Plaintiff observes that while the Commissioner points out that the ALJ provided boilerplate language to the effect that "he considered the combined effect' of Plaintiff's impairments . . . the Commissioner does not show that the ALJ considered the functional impact of [Plaintiff's] obesity anywhere in his discussion of her RFC." Dkt. No. 22 at 1. In short, Plaintiff argues that she is not complaining that the ALJ failed to either

"follow formalistic rules" or "explicitly articulate every bit of evidence that he accepted or rejected," but rather she complains because the ALJ made no reference whatsoever to her well-documented obesity in formulating his RFC. *Id*. at 1-2. And without some indication that the ALJ meaningfully considered this severe impairment, the ALJ failed to conduct the proper legal analysis required under SSR 02-1P. *Id.* The undersigned agrees.

The purpose of an RFC is to determine the most an individual can do despite their limitations. SSR 96-8P, 1996 WL 374184, at *1 (1996). To determine an individual's RFC, an ALJ will consider all evidence, and then determine what evidence is consistent, and if that evidence is sufficient to determine disability. 20 C.F.R. § 404.1520b(a) (2017). The ALJ will also determine what evidence is incomplete or inconsistent and how to best evaluate and manage that evidence or whether to use that evidence at all. *Id.* at (b)-(c). An RFC must be based on all relevant evidence and consistent with both objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.920c (2017).

Under the Social Security review standards, an ALJ must assess the effect obesity has on a claimant's ability as reflected in the RFC. SSR 02-1P, 2002 WL 34686281, *3 (Sept. 12, 2002). The ALJ must evaluate obesity and its potentially limiting effect over time on the "ability to sustain function over time." *Id.* at *4. Once the ALJ analyzes the claimant's medical records of obesity and its effect, particularly on related impairments such as knee and spine issues, the RFC must reflect that evaluation. *Id.*

Obesity increases the risk of "hypertension, heart disease, peripheral vascular disease . . . osteoarthritis, sleep apnea" and can contribute to depression according to SSR 02-1p, at *6. Plaintiff explains she is diagnosed with hypertensive disorder with

8

hypertensive retinopathy, osteoarthritis, obstructive sleep apnea and mixed anxiety and/or depressive disorder. Dkt. No. 20 at 15. But the ALJ did not provide an evaluation of the effect of her obesity on her physical movements in a workplace setting or "its potentially limiting effect over time on the 'ability to sustain function over time.'" *Id.* at 15. (citing *Joann G. v. Kijakazi*, NO. 6:20-CV-0073-H-BU, 2021 WL 6427567, at *4 (N.D. Tex. Dec. 13, 2021), *adopted in part, rejected in part on other grounds* 2021 WL 114009 (N.D. Tex. Jan. 12, 2022).

Here, as Plaintiff explains, her BMI ranges from 38.9 to 50.03, which places her in the "extreme" BMI category. *See* Dkt. No. 20 at 14. She also has several medical impairments that are listed on SSR 02-1p that the ALJ recognized as severe including: diabetes mellitus, degenerative joint disease, and depression. *Id.* at 15. In his decision, the ALJ recognizes obesity as a severe impairment but does not give any explanation for how it may affect Plaintiff's ability to perform the RFC or what it may do in combination with her other impairments. Tr. 17-24.

In his decision, the ALJ mentions Plaintiff's obesity three times. First, he finds at step two that obesity is among Plaintiff's severe impairments. Tr. 18. Second, the ALJ notes that he considered Plaintiff's obesity and degeneratrive joint disease of the hips at step three in determining whether she has an impairment or combination of impairments that meets or medical equals the severity of a listed impairment. Tr. 19.[3] And finally, in

---

[3] The ALJ writes:

Listing 1.02 requires evidence of findings of joint space narrowing, bony destruction or ankylosis of the affected joints on medially acceptable imaging. June 2018 imaging of the bilateral hips from shows mild

formulating Plaintiff's RFC at step three, the ALJ observes, among other conditions, that "the claimant is obese," before concluding summarily that "[t]he combined effects of these conditions support exertional, postural, mental and environmental limitations as provided in the residual functional capacity assessment." Tr. 22.

But while the ALJ mentions Plaintiff's obesity, briefly, he fails to explain how her obesity, in addition to her degenerative joint disease, affected her ability to work. Tr. 19. Additionally, the ALJ did not question Plaintiff about her obesity or its effects in the hearing. *See* Tr. 32-58. Only Plaintiff's representative asked about her height and weight. Tr. 47. The ALJ also never questioned the VE about whether Plaintiff's obesity would impact her ability to perform the jobs suggested. Tr. 50-57.

With no analysis or demonstrated review of medical evidence regarding obesity's effect on Plaintiff's joints, spine, and other noted severe impairments, the ALJ failed to satisfy the standards in SSR 02-1P. *See Walford v. Astrue*, No. 3-09-CV-0629-BD, 2011 WL 2313012, at *5 (N.D. Tex. June 10, 2011) (remanding case where the ALJ did not consider the effect of plaintiff's obesity on her knee pain and mobility problems, and therefore failed to comply with SSR 02-1P). "For example, someone with obesity and arthritis affecting a wight-bearing joint may have more pain and limitation than might be expected from arthritis alone." SSR 02-1, at *6.

---

degenerative changes in both sacroiliac joints and in both hips with pincer type femoroacetabular impingement (Exhibit 6F/8). Imaging as of January 2020 indicates moderate degenerative changes bilaterally with no acute bony abnormality (Exhibit 13F/41). The imaging of record does not support the criteria of this listing.

Tr. 19.

Finally, '[w]here an ALJ fails to comply with SSR 02-1p, courts generally find that the claimant has be prejudiced unless: (1) the ALJ limits the clamant to sedentary work, or (2) the record is totally devoid of medical evidence establishing any obesity-related limitations." *Walford*, 2011 WL 2313012, at *5. Here, the ALJ found Plaintiff capable of performing light work and therefore prejudice is found. Tr. 20.

Because the ALJ failed to follow the review required, the undersigned is unable to determine whether and to what extent the ALJ adequately analyzed Plaintiff's obesity in determining her RFC. And for this reason, the undersigned is unable to determine whether substantial evidence of record supports the RFC in this regard. And because proper inclusion of the effect of Plaintiff's obesity in the RFC could have resulted in a different outcome at step four, the error is not harmless. Because the undersigned finds reversible error in the first issue, analysis of Plaintiff's second and third issues are not necessary.

## IV.  CONCLUSION

For the foregoing reasons, the hearing decision is REVERSED, and this case REMANDED to the Commissioner of Social Security for further proceedings consistent with this order. On remand, the undersigned orders that "the interaction or cumulation of all of [Plaintiff's] mental and physical medical problems and impairments" be considered in the ALJ's determination, with particular attention to Plaintiff's obesity. *Loza*, 219 F.3d 378, 399 (5th Cir. 2000).

ORDERED this 28th day of July 2022.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE